**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **MICHAEL DAVID WILSON, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 5:21-cv-00457-MTT-CHW** |
| **v.** | : | |
| | : | |
| **WARDEN CLINTON PERRY,** | : | |
| **JESSICA DEAN,** | : | |
| **LACHAKA McKENZIE,** | : | |
| **PETER EDDIE,** | : | |
| **COUNSELOR C. MARTIN,** | : | |
| **CHIEF COUNSELOR STREETER,** | : | |
| **GA. DEPT. OF CORRECTIONS,** | : | |
| **TIMOTHY WARD,** | : | |
| **UNNAMED EMPLOYEES,** [1] | : | |
| | : | **Proceedings Under 42 U.S.C. §1983** |
| **Defendants.** | : | **Before the U. S. Magistrate Judge** |
| | : | |

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff Michael David Wilson, Jr., an inmate at the Macon State Prison in

Oglethorpe, Georgia, filed a 42 U.S.C. § 1983 action.  ECF No. 1.  Plaintiff also filed a

motion to proceed *in forma pauperis*.  ECF No. 2.  Plaintiff's motion to proceed *in forma*

*pauperis* was denied due to Plaintiff's ability to pay $402.00 filing fee and he was ordered

to pay fee.  ECF No. 6.  Plaintiff repeatedly informed the Court that he requested Macon

State Prison officials pay the filing fee from his trust account, yet his requests have been

ignored.  ECFG Nos. 7, 10, and 12. Plaintiff has now submitted another motion for an

---

[1] Plaintiff has filed a motion to amend his complaint to add defendants (ECF No. 5) that
has been granted below.  Therefore, the Clerk's office is **DIRECTED** to add Georgia
Department of Corrections, Commissioner Timothy Ward, and Unnamed Employees as
Defendants.

extension of time for the filing fee to be submitted or in the alternative, "reconsideration to proceed in forma pauperis as to not delay [him] from the courts any further".   ECF No. 15.   In accordance with the Court's previous order and instructions (ECF No. 13), Plaintiff has included copies of the forms on which he requested that the prison withdraw the $402.00 filing fee from his prison trust fund account dated February 15, 2022 (ECF No. 15-2) and April 13, 2022 (ECF No. 15-3).   Plaintiff has also included a detailed synopsis of his efforts toward informing prison personnel of the need to forward these funds to the Court.   ECF No. 15.   Though the Court has not received the filing fee, Plaintiff's submissions indicate that the failure to pay the required filing fee cannot be attributed to Plaintiff. The requirement to prepay the filing fee prior to any further processing of this case is accordingly waived. However, it is **DIRECTED** that the **CLERK** forward a copy of this **ORDER** to the business manager of the facility in which Plaintiff is incarcerated so that a withdrawal from his account may be made to pay for the $402.00 filing fee in this case. Plaintiff's motion for an extension of time or in the alternative grant leave to proceed in forma pauperis (ECF No. 15) is **DENIED as moot.**

Plaintiff's motion to amend the complaint to include additional defendants (ECF No. 5) is **GRANTED** as explained below.   This case is now ready for preliminary review. On preliminary review, Plaintiff's Eighth Amendment claims against Defendants Perry and Dean shall proceed for further factual development.   It is **RECOMMENDED**, however, that Plaintiff's claims against all other Defendants be **DISMISSED without prejudice.**

## MOTION TO AMEND THE COMPLAINT

Plaintiff has filed a motion to amend his complaint to include additional defendants. ECF No. 5.   In his motion to amend, Plaintiff requests that he be allowed to add Commissioner Timothy Ward, Georgia Department of Corrections, and "unnamed employees as of this time" as a Defendants.   *Id*.   Plaintiff is allowed to amend his complaint at this early stage of litigation. *See Brown v. Johnson,* 387 F.3d 1344, 1349 (11th Cir.2004) (holding that the district court abused its discretion when it denied plaintiff's motion to amend when plaintiff filed his motion before the district court dismissed his complaint and before any responsive pleadings were filed).   Accordingly, Plaintiff's Motion to Amend his Complaint is **GRANTED**.   Commissioner Timothy Ward, Georgia Department of Corrections, and Unnamed Employees have been added as Defendants to this civil action.

## PRELIMINARY SCREENING

### I.    Standard of Review

In accordance with the Prison Litigation Reform Act ("PLRA"), the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.   *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).   *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."   *Id.* (internal quotation

marks omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).   The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."   *Id.* (internal quotation marks omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action."   *Twombly*, 550 U.S. at 555 (first alteration in original).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.   *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.   *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

**II.    Factual Allegations**

Plaintiff is an inmate at Macon State Prison.   ECF No. 1 at 4.   Plaintiff states that on March 13, 2019, he was assaulted and robbed for more than one and a half hours by gang members wielding a knife.   *Id*. at 5.   Plaintiff complains that he" got no help from the officer on duty".   *Id*.   He claims that he "banged on the booth window for help" and Defendant Dean "never made the call for help".   *Id*. at 9.   He further states that Defendant Dean "knew the seriousness of the situation at hand and did nothing".   *Id*.   Plaintiff also claims that Defendant Deputy Warden Eddie committed a "dereliction of duty/ tort of duty failure to protect prisoner from assault by other prisoners".   *Id*. at 11.

In addition, Plaintiff alleges that "the reign of violence and terror was so high in F-1 that there was no way possible for Warden Perry not to have known about it (with the constant lockdowns and shakedowns by cobra and tact squads) constant issues of gang wars, stabbings, beatings and robberies happening on a regular basis".   *Id*. at 8.   He further claims that despite being aware of the dangers posed in the F-1 dorm, Defendant Perry "failed to take corrective action in response to high rates of assaults".   *Id*.

Plaintiff further complains that Defendant Counselor Martin violated his "4th amendment rights" and was "negligent in her duties" when she removed him from the Faith and Character based program within the M-3 dorm.   *Id*. at 12.   Plaintiff complains that

5

his removal from the program was without cause and led to him being placed in the F-1 dorm.  *Id.*

Lastly, Plaintiff complains that Defendants Deputy Warden McKenzie, Deputy Warden Eddie, and Counselor Streeter, in various ways, have been negligent, abused their positions, failed to respond to him after the assault, failed to communicate with his family, and have failed to reply to his complaints in violation of his "4th & 8th amendment rights". *Id*. at 10-13.

Plaintiff seeks damages and that the Defendants "be severly repramended (sic) even loss of job in the Dept of Corrections".[2]  *Id.* at 7.

### III.    Plaintiff's Claims

A. <u>Deliberate indifference to safety claim against Warden Perry</u>

Plaintiff alleges that violence in the F-1 dorm of Macon State Prison was so pervasive at the time of his assault in 2019 that he and others were at a persistent risk of harm.   ECF No 1 at 8.   He further alleges that Defendant Perry was aware of the violence and failed to take any corrective action.   *Id*.   Plaintiff's allegations implicate a claim for deliberate indifference to safety.

To state an Eighth Amendment claim for deliberate indifference to safety, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an

---

[2]  Even if Plaintiff prevails in his claims against these defendants, this Court has no authority under § 1983 to order the termination of employment of any prison employee. *See Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir.), cert. denied, 438 U.S. 915 (1978); *Bush v. Camp*, 1:11–CV–64, 2011 WL 2457909 at * 2 n.1 (M.D.Ga. May 23, 2011). The issue whether these officers should be employed by the prison is strictly a matter for the prison and/or Georgia Department of Corrections to determine.

unreasonable risk the prisoner's health or safety and that the defendant was deliberately indifferent to that condition.   *See Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004).   In this regard, the United States Supreme Court has recognized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jiminez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).   "[O]ccasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable."   *Purcell ex rel. Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973)).

To establish deliberate indifference based on a generalized risk of harm, a plaintiff must allege facts showing "that serious inmate-on-inmate violence was the norm or something close to it."   *Purcell,* 400 F.3d 1313 at 1322.   Plaintiff's allegations on this point are largely generalized and conclusory contentions that inmate-on-inmate violence was nearly constant.   For instance, Plaintiff states "the reign of violence and terror was so high in F-1 that there was no way possible for Warden Perry not to have known about it (with the constant lockdowns and shakedowns by cobra and tact squads) constant issues of gang wars, stabbings, beatings and robberies happening on a regular basis".   ECF No. 1 at 8.   Although these allegations are somewhat vague and conclusory, at this stage of the proceeding the Court must accept them as true and construe them in Plaintiff's favor. Under this standard, it appears possible that Plaintiff's allegations could support his more

general claim that violence in the F-1 dorm was so pervasive as to constitute the norm even though Plaintiff cites no detailed and specific incident of violence other than his own experience.

To the extent Plaintiff is attempting to sue this Defendant in his supervisory capacity, an examination of Plaintiff's claims as to vicarious liability would also be prudent.   Indeed, "[b]ecause vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."   *Iqbal*, 556 U.S. at 676.   However, a supervisor who did not personally participate in the allegedly unconstitutional conduct can be held liable under § 1983 if there is some other causal connection between his actions and the alleged constitutional violation.   *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam).   This causal connection can be established if the plaintiff shows

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.
> *Id.*

Plaintiff has alleged that the F-1 dorm at Macon State Prison was an extremely violent housing unit where inmates were constantly being assaulted by other gang-affiliated inmates.   *See* ECF 1 at 8.   At this early stage of the litigation, these facts at least suggest the existence of a history of widespread abuse thereby allowing Plaintiff's Eighth Amendment claims to proceed against Defendant Perry even to the extent Plaintiff sues

him in his supervisory capacity only.

Moreover, the complaint suggests that Defendant Perry was both objectively and subjectively aware of the risk to inmate safety resulting from rampant violence in the F-1 dorm.   To that end, Plaintiff states "Warden Clinton Perry knowing of the high violence rate stabbings, riots and gang wars going on in F-1: (1) failed to provide adequate supervision of inmates (2) failed to maintain locks in working order (3) failed to take corrective action in response to high rates of assaults".   ECF No. 1 at 8.   Plaintiff further claims that "Warden Perry was also aware of the breech of security, the fact of having one officer to watch and maintain 1 building, 2 dorms where there is never an officer on the floor [and] only 1 or none in the booth" and "at the time of the assault on [Plaintiff] there was only one officer".   *Id*.

At this early stage of the litigation, given these allegations, the Court cannot say that Plaintiff's deliberate indifference to safety claim against Defendant Perry is necessarily frivolous or fails to state a claim.   As such, it shall be allowed to proceed for further factual development.

B.   Failure-to-protect claim against Officer Dean and Deputy Warden Eddie

Plaintiff's claim that Defendant Dean failed to protect him while he was being attacked by other inmates is generally cognizable under the Eighth Amendment to the United States Constitution.   *See, e.g., Farmer*, 511 U.S. at 837.   A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.

*Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).   To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.   *Id.* at 1332.   Plaintiff states that he" got no help from the officer on duty" as he ran from other inmates who were trying to stab him.   ECF No. 1 at 5.   He claims that he "banged on the booth window for help" and Defendant Dean "never made the call for help".   *Id*. at 9.   He further states that Defendant Dean "knew the seriousness of the situation at hand and did nothing".   *Id*.   Construing Plaintiff's allegations in his favor, Plaintiff's Eighth Amendment failure-to-protect claims against Defendant Dean shall proceed for further factual development.

As for any failure-to-protect claim against Defendant Eddie, Plaintiff provides no factual basis to support the claim.   Plaintiff merely lists Defendant Eddie's name and includes "failure to protect prisoner from assault by other prisoners" amongst a list of other unsupported claims against him.   *See* ECF No. 1 at 11.   As previously mentioned earlier and even explained in greater detail below, a Plaintiff is required to do more than make vague and conclusory claims against a Defendant to avoid dismissal of those claims. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").   Accordingly, it is **RECOMMENDED** that Plaintiff's failure-to-protect claim against Defendant Eddie be **DISMISSED** without prejudice for failure to state a claim.

C.  Claims against Georgia Department of Corrections

Although Plaintiff makes no specific allegations regarding the Georgia Department of Corrections, he also names it as a defendant.   Even if Plaintiff had made any allegations as to the Georgia Department of Corrections, the Eleventh Amendment bars suits directly against a state or its agencies.   *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)).   This bar applies "regardless of whether the plaintiff seeks money damages or prospective injunctive relief."   *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).   The Georgia Department of Corrections, which is an agency of the State of Georgia, is thus protected by sovereign immunity.   *Id.*; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 98, 71 (1989) (explaining that the state and its agencies are not "persons" for the purposes of § 1983 liability).   Accordingly, it is **RECOMMENDED** that Plaintiff's claim against the Georgia Department of Corrections be **DISMISSED WITHOUT PREJUDICE** as frivolous.

D.  Claims against Commissioner Timothy Ward

As with his claims as to the Georgia Department of Corrections, Plaintiff has made no allegations whatsoever regarding a constitutional violation perpetrated by Defendant Ward.   *See* ECF No. 5.   A district court properly dismisses a complaint when the plaintiff, other than naming the defendant in the caption of the complaint, fails to state any allegations that connects the defendant with an alleged constitutional violation.   *Douglas v. Yates***,** 535 F.3d 1316, 1322 (11th Cir. 2008) (citing *Pamel Corp. v. P.R. Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980)) ("While we do not require technical niceties in pleading,

we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1983) (citations omitted) (stating there must be proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation").

If Plaintiff is attempting to assert a claim based solely on the supervisory role of the Defendant, then his claim still fails.   It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993).   Stated another way, a prisoner must allege facts showing either that a supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation to state a claim against a prison official based solely on their supervisory position.   *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003; s*ee also Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam) ("The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." (internal quotation marks omitted)).

Because Plaintiff has failed to make any allegations whatsoever as to Defendant Ward, it is **RECOMMENDED** that any claim as to this Defendant be **DISMISSED WITHOUT PREJUDICE**.

E.  Claim against Unnamed Employees

To the extent Plaintiff simply seeks to bring claims against unidentified defendants listed as "unnamed employees as of this time", he has not provided enough detail to state a claim upon which relief may be granted.   *See* ECF No. 5.   As a general rule, "fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam).   The one exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown.   *See id.* (citing *Dean v. Barber*, 951 F.2d 1201, 1215-16 (11th Cir. 1992)).   To proceed against an unnamed defendant, a plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served." *Dean*, 951 F.2d at 1216 (internal quotation marks omitted). Besides not describing these unnamed employees, the Plaintiff further fails to allege any constitutional violation committed by them.   *Id*.   Thus, Plaintiff's claims as to the Defendant Unnamed Employees are subject to dismissal.   *See Douglas*, 535 F.3d at 1321-22 (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation); *Richardson*, 598 F.3d at 738 (dismissal of claim appropriate where "the description in [plaintiff's] complaint was insufficient to identify the defendant among the many guards employed at [the prison]").

It is therefore **RECOMMENDED** that Plaintiff's claims as to Defendants Unnamed Employees be **DISMISSED WITHOUT PREJUDICE** as frivolous.

> F. <u>Claim against Counselor C. Martin regarding Plaintiff's removal from rehabilitative program</u>

Plaintiff specifically mentions that Counselor Martin removed him from his role as a mentor in the Faith and Character Based Program within the M-3 dorm, which ultimately led to his transfer to the F-1 dorm.  ECF No. 1 at 12.  Plaintiff claims that his removal from the program and ultimate placement into a different dorm is a "direct violation to [his] 4th Amendment rights".  In support of this premise, he argues that he had no disciplinary reports and that there was no justifiable reason to remove him from the program and the M-3 dorm.

Plaintiff's reliance on the Fourth Amendment in this context is misplaced.  *C.f., Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984); *De Jesus v. Odom*, No. 12-CV-0306, 2012 WL 4023346, at *5 (E.D. Wis. Sept. 12, 2012) ("The Fourth Amendment's prohibition of unreasonable seizures does not apply to the transfer of a [prisoner] from general population to [another] unit.").  Prisoners have no constitutional right to be classified at a specified security level.  *See Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008); *Moody v. Daggett*, 429 U.S. 78 (1976) (prison officials have full discretion to control prisoner classification) (citing 18 U.S.C. § 4081)).  Thus, Plaintiff's claim under the Fourth Amendment as to his removal from a rehabilitative program and placement in another dorm is subject to dismissal.

Even if Plaintiff mistakenly cited the Fourth Amendment as the basis of his claim and instead intended to raise a Fourteenth Amendment Due Process claim, he has still failed to state a claim for which relief may be granted. A procedural due process violation of the Fourteenth Amendment occurs where "the state fails to provide due process in the deprivation of a protected liberty interest." *Hallett v. Ohio*, No. 16-14969, 2017 WL 4511358, at *2 (11th Cir. Oct. 10, 2017); *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc).   To proceed on this type of due process claim, a prisoner must establish three elements: (1) the deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.   *See, e.g., Spencer v. Benison*, 5 F.4th 1222, 1232 (11th Cir. 2021).

As to the first element of a due process claim, a liberty interest exists where: (1) a change of confinement is so severe that it essentially exceeds the sentence imposed by the court or when (2) the state has consistently given a certain benefit to prisoners and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999)(quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).   Federal courts have repeatedly held that lack of participation in or removal from educational or rehabilitative programs does not create conditions of confinement so severe as essentially to exceed the sentence imposed by a court. *See Al-Amin v. Donald*, 165 F. App'x 733, 739 (11th Cir. 2006) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), modified on other grounds by *Sandin*, 515 U.S. 472) ("[T]he transfer of an inmate to less amenable and more

15

restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.").

Additionally, the federal courts have found that a plaintiff's exclusion from continued enrollment in an educational or rehabilitative program does not impose such an atypical or significant hardship as to create a liberty interest. *See, e.g.*, *Biester v. Lanier*, 249 F. App'x 782, 783 (11th Cir. 2007) (prisoner does "not have a liberty interest in parole, transitional centers, or work incentive credits."); *Luckett v. Lewis*, 2013 WL 6230103, at *2 (S.D. Miss. Nov. 30, 2013) (dismissing complaint as frivolous because the plaintiff had no constitutionally protected right to participate in the GED program while in protective custody, as it was not an atypical or significant hardship); *Moody*, 429 U.S. at 88 n.9 (prisoners have "no legitimate statutory or constitutional entitlement sufficient to invoke due process" in participating in a prison's rehabilitative programs).

Plaintiff has not shown that he has a constitutionally-protected interest in being housed in any particular prison dorm or participating in rehabilitative prison programs. *See, e.g., McKune v. Lile,* 536 U.S. 24, 39 (2002) (inmate's transfer to another facility does not implicate a liberty interest, even if it results in the loss of access to vocational, educational, recreational, and rehabilitative programs); *Santos v. Hutto*, No. 2:09-CV-135-TMH, 2009 WL 1405518, at *3 (M.D. Ala. May 19, 2009) ("Plaintiff, ... as an inmate in the … prison system has no state-created liberty interest which entitles him to participation in favorable prison programs, including educational classes[,]" so "his discharge from education classes ... fails to state a constitutional violation, [and] is due to be dismissed").

16

Because Plaintiff had no liberty interest in remaining in the faith/character-based program offered in the M-3 dorm, his claim that he was denied due process in connection with his removal from that program and its accompanying dorm is subject to dismissal. *Velasquez v. Weinman*, 466 F. App'x 806, 806-07 (11th Cir. 2012) (per curiam) (affirming dismissal of prisoner's § 1983 claims on grounds that prisoner had no constitutional right to vocational, rehabilitative, or educational programs); *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (citing *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate).

Accordingly, to the extent Plaintiff seeks to raise such claims, it is **RECOMMENDED** that they be **DISMISSED without prejudice**.

G.  Unspecified claims against Deputy Warden McKenzie, Deputy Warden Eddie, and Counselor Streeter

42 U.S.C. § 1983 is not itself a source of substantive rights; it is a vehicle for the enforcement of rights that are conferred elsewhere. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 271 (1994).   Accordingly, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*; s*ee also Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (alteration adopted) (quoting *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997) )("A successful section 1983 action requires that the plaintiff show he was deprived of a federal right by a person acting under color of state law");

*Grigsby v. Thomas*, 506 F.Supp.2d 26, 28 (D .D.C.2007)("Even though a pro se complaint should be construed liberally, a pro se complaint still must state a claim upon which the Court can grant relief").   "But the leniency accorded *pro se* litigants does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading to sustain an action." *Matthews, Wilson & Matthews, Inc. v. Capital City Bank*, 614 Fed.Appx. 969, 969 n.1 (11th Cir. 2015) (citing *GJR Invs., Inc. v. Cnty. of Escambia*, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)).

Moreover, Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this rule is "to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"   *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).   While a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...."   *Id.* at 555-56.

Plaintiff's §1983 claims are deficient as to these Defendants.   Plaintiff merely places each Defendant's name on a separate sheet of paper and then recites a vague litany of legal jargon as his claims.   He repeatedly and without specific factual support makes conclusory allegations such as "pure negligence and out right cruel and malice is a violation of ... 4th Amendment right", "abuse of position by ignoring and not performing her

duties", "dereliction of duty", "ignoring the situation maliciously a clear violation of …
8th & 4th Amendment rights", "never responding to [Plaintiff's contacts] shows a blatant
abuse of power in trying to sweep this under the rug", and "tort of duty has been failed by
[Plaintiff's] 4th & 8th Amendments violated the reckless disregard".   ECF No. 1 at 10-13.
Plaintiff's conclusory allegations regarding these Defendants fail to meet the mandatory
pleading requirements of the federal rules and are thus subject to dismissal. *See Fullman v.
Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (vague and conclusory allegations are
subject to dismissal).   Moreover, Plaintiff's repeated claims of "negligence" and "neglect
of duty" do not state a constitutional violation. Negligent conduct does not serve as a basis
for liability under § 1983.   *See e.g. Farrow v. West,* 320 F.3d 1235, 1245 (11th Cir.2003)
(holding that a negligent act by a state official does not give rise to § 1983 liability);
*Hernandez v. Florida Dept. of Corrections*, 281 Fed. Appx. 862, 866 (11th Cir. 2008)
("Allegations of negligent conduct do not state a constitutional claim and thus, are not
actionable under § 1983.").

Plaintiff alleges that Defendants McKenzie, Eddie, and Streeter somehow ignored
him (as well as his family's calls) after his assault and did not respond to his "contacts" or
paperwork, but these bare allegations do not set forth a violation of a constitutional right
despite Plaintiff's assertion that the Fourth and Eighth Amendments apply to these
situations.   *See* ECF No. 1 at 10-13.   These allegations may be read as an attempt to bring
a § 1983 action based on violations of a rule or policy.   However, "[i]n a § 1983 action, a
federal court considers whether a constitutional right has been infringed, not whether

bureaucratic procedures have been violated." *Jones v. Schofield*, No. 1:08-CV-7 WLS, 2009 WL 902154, at 3 (M.D. Ga. Mar. 30, 2009) (*citing Rineholtz. v. Campbell* 64 F.Supp.2d 721, 731 (W.D.Tn.1999).   "Prison regulations ... were never intended to confer rights on inmates or serve as a basis for constitutional claims." *Id*.  "Instead, [state prison] regulations, as well as the Unified Code [of Corrections], were designed to provide guidance to prison officials in the administration of prisons."   *Id*.   "Prison regulations and Standard Operating Procedures do not confer federal rights to prisoners that may be enforced or redressed in a § 1983 action."   *Id*.   Therefore, any constitutional claim raised by the Plaintiff regarding these Defendants violating a prison rule, regulation, or policy is subject to dismissal.

As to Defendant Streeter, Plaintiff's complaint may be read to allege that, as a "Grievance Coordinator", she violated his rights by not reviewing his complaints or grievances.   A prisoner has no constitutional right to participate in grievance procedures. *See Wildberger v. Bracknell*, 869 F.2d 1467, 1467-68 (11th Cir. 1989); *Bingham v. Thomas*, 654 F.3d 1171 (11th Cir. 2011) (affirming district court's dismissal of Georgia state prisoner's § 1983 claim that prison's grievance procedures were inadequate) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir.2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.")).   A supervisor is not

"personally involved" in a constitutional violation merely because she fails to respond to complaints from a prisoner. *Asad v. Crosby*, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000).

For all the reasons stated above, it is **RECOMMENDED** that Plaintiff's claims as to Defendants McKenzie, Eddie, and Streeter be **DISMISSED without prejudice** for failure to state a claim.

### III.    Conclusion

As discussed herein, Plaintiff's Eighth Amendment claims against Defendants Perry and Dean shall proceed for further factual development.    However, it is **RECOMMENDED** that Plaintiff's failure-to-protect claim as to Defendant Eddie be **DISMISSED without prejudice**.    It is further **RECOMMENDED** that all remaining claims as to Defendants Georgia Department of Corrections, Ward, Unnamed Employees, Martin, McKenzie, Eddie, and Streeter be **DISMISSED without prejudice**.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   The parties may seek an extension of time to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection should be no longer than **TWENTY (20) PAGES** in length.  *See* M.D. Ga. L.R. 7.4.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

**ORDER FOR SERVICE**

Because Plaintiff is not proceeding *in forma pauperis* in this case, and the Court having found that Plaintiff has made colorable constitutional violation claims against Defendants Warden Clinton Perry and CO Jessica Dean, it is **ORDERED** that Plaintiff serve these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

Plaintiff must secure service upon the Defendants in accordance with the provisions of Fed. R. Civ. P. 4.   The Court is providing Plaintiff with a Rule 4 Service Package, which contains instructions, the necessary forms to use for waiver of service, and a copy of Fed.

R. Civ. P. 4.   While Plaintiff may request a waiver of service of summons from Defendants in accordance with Fed. R. Civ. P. 4(d), if Defendants do not waive service, Plaintiff must make arrangements with a person authorized to make service under Fed. R. Civ. P. 4(c). In accordance with Fed. R. Civ. P. 4(m), failure to achieve service within 90 days after filing of the Complaint may result in dismissal of this case.   If Plaintiff is financially unable to arrange for service of process, he may submit a motion to the Court in which he (1) explains to the Court what efforts he made to perfect service and (2) includes an affidavit in support of his claim of indigence, along with a certified copy of his trust fund account statement (or institutional equivalent) for the previous six-month period.

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendant is similarly advised that she is expected to diligently defend all allegations made against her and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.   The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 17th day of May, 2022.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge